**George W. HAGY, et al., Plaintiffs,**

**v.**

**UNITED STATES of America,
Defendant.**

**Civ. A. No. 88–0060–A.**

United States District Court,
W.D. Virginia,
Abingdon Division.

Sept. 5, 1991.

Eric D. Whitesell, Tazewell, Va., for plaintiffs.

Jerry W. Kilgore, Asst. U.S. Atty., and David Hickman, Washington, D.C., for U.S.

## MEMORANDUM OPINION

WILSON, District Judge.

This is a refund suit under 26 U.S.C. § 7422 for the tax year 1980 by plaintiffs, George W. Hagy ("Hagy") and his wife, for income taxes and a negligence penalty Hagy and his wife paid on insurance commissions following an assessment for those amounts. Hagy and his wife maintain that the commissions were not income to Hagy but to his wholly owned corporation, the George W. Hagy Insurance Agency, Inc. ("Hagy Agency"), and that a negligence penalty should not have been assessed. The court finds that the disputed commission income was properly attributed to Hagy and that the negligence penalty has not been shown to be unwarranted.

Hagy has sold insurance in Virginia since he first qualified as a life insurance agent

in 1978. Originally, he and another individual formed a company, Mountaineer Insurance Company, Ltd. ("Mountaineer"). In October of 1978, he entered into a "career contract for full time agents" with the Massachusetts Mutual Life Insurance Company ("Massachusetts Mutual").[1] Although Hagy would rather have had his company enter into the contract with Massachusetts Mutual, Massachusetts Mutual refused.[2] But with the consent of Massachusetts Mutual, Hagy assigned his "right, title and interest" in the contract to Mountaineer. Later, in July of 1979, Hagy formed the Hagy Agency (a wholly owned corporation), terminated the assignment to Mountaineer, and reassigned the contract to the Hagy Agency with the consent of Massachusetts Mutual.

In 1980 Hagy was the sole agent for the Hagy Agency but had no employment contract. Most of his sales were for Massachusetts Mutual, although he had sales for various other companies. Policies were sold in his name, rather than the Hagy Agency, which did not have a license from the State Bureau of Insurance to sell insurance. Commissions were paid by checks made out to Hagy personally. Hagy placed the commissions from some companies in his personal account, although all of the commissions from Massachusetts Mutual were consistently placed in the Hagy Agency's account.[3]

In 1980 Massachusetts Mutual issued W-2 forms to Hagy for payments totalling $46,236.50. Hagy and his wife reported the Massachusetts Mutual income on a schedule attached to their 1980 Federal Income Tax Return, but deducted the same amount, stating that it was reported on the Hagy Agency's corporate return. The only issues currently before the court are whether the commission income for 1980 was properly attributed to Hagy and not the Hagy Agency and whether a negligence penalty should have been imposed.

## I.

It is well established that income is taxed to the person who earns it. *Commissioner v. Culbertson*, 337 U.S. 733, 739–40, 69 S.Ct. 1210, 1212–13, 93 L.Ed. 1659 (1949). An individual who earns income cannot escape taxation "by anticipatory arrangements and contracts however skilfully devised...." *Lucas v. Earl*, 281 U.S. 111, 115, 50 S.Ct. 241, 241, 74 L.Ed. 731 (1930). "The choice of the proper taxpayer revolves around the question of which person or entity in fact controls the earning of the income rather than the question of who ultimately receives the income." *Vercio v. Commissioner*, 73 T.C. 1246, 1253 (1980) (citations omitted); *Vnuk v. Commissioner*, 621 F.2d 1318, 1320 (8th Cir.1980); *Johnson v. United States*, 698 F.2d 372, 374 (9th Cir.1982). Because the convergence of at least four factors demonstrates that Hagy, not the Hagy Agency, controlled the earning of the commissions paid by Massachusetts Mutual, those commissions were taxable to him.

First, Hagy had no employment contract with the Hagy Agency. The Hagy Agency could not force Hagy to sell for Massachusetts Mutual or for any other company. It simply had the purported right to receive any commission income Hagy received from Massachusetts Mutual.

Second, there was no contract between Massachusetts Mutual and the Hagy Agency. To the contrary, Massachusetts Mutual refused to contract with the Hagy Agency.

---

1. The contract defined "full time agent" as "[a]n agent whose principal business activity is the solicitation of applications for Business in the Company."

2. In his deposition the following colloquy occurred between Hagy and his counsel:
   Q. [Mr. Hagy], did you ever make inquiry of Massachusetts Mutual, as to whether or not they could pay premiums to your company and contract with your company?

A. Yes, sir, I did. When we first started, that is the way I wanted to do it, but they don't do it that way. They won't. They licensed me and the checks come to me. They wouldn't license my agency, in other words.
Deposition of George W. Hagy at 12.

3. This fact does not appear in the record. It was conceded, however, in oral argument when the cross-motions for summary judgment were heard.

Third, although the Hagy Agency was organized, according to its articles of incorporation, to sell "all lines of insurance," Hagy earned and deposited in his personal account commissions from companies other than Massachusetts Mutual. Although he deposited all of the commissions from Massachusetts Mutual in the Hagy Agency's account, he was free to devote his time to selling in his discretion either Massachusetts Mutual policies or the policies of the other companies. If his arrangement was recognized for tax purposes, Hagy easily could manipulate his personal earned income by selling more Massachusetts Mutual policies and assigning his commissions to the Hagy Agency. For that matter, Hagy could set up as many corporations as he desired, limited only by the number of insurance companies for which he sells. Then, he could deflect and dilute earned income by selling various companies' policies and assigning the commissions to his various corporations.

Fourth, Hagy has demonstrated the irrelevance of his corporations to the Massachusetts Mutual business. Originally, Hagy assigned his "career contract for full-time agents" to Mountaineer. Later, he simply terminated the assignment to Mountaineer and reassigned the contract to the Hagy Agency under a written assignment identical in all respects to the original assignment to Mountaineer. Expedience, likewise, presumably would permit him to terminate the assignment to the Hagy Agency and reassign it to another closely held corporation. Thus, whatever theoretical legal rights and obligations that might have arisen by virtue of the assignments clearly have been subordinated to Hagy's overriding control as shareholder, officer and director.

Hagy and his wife cited three cases in support of their position that the income for Massachusetts Mutual should be taxed to the Hagy Agency and not to them. Two of those cases are clearly distinguishable and the court finds the third to be unpersuasive. The court finds it unnecessary to detail the facts of those cases here. It is sufficient to say that in the first of those cases, *Keller v. Commissioner*, 77 T.C. 1014 (1981), *aff'd*, 723 F.2d 58 (10th Cir. 1983), the taxpayer had a written employment agreement with his corporation establishing an employer-employee relationship, and as found by the tax court, the evidence indicated that "the corporation was respected as an independent entity...." *Id.* at 1032. In the second case, *Foglesong v. Commissioner*, 621 F.2d 865 (7th Cir.1980), the corporation, not the taxpayer, was a party to the contract under which services were performed, and the corporate form was "consistently honored by the taxpayer." *Id.* at 869. The third case, *McGee v. United States*, 81–1 U.S.Tax Cas. (CCH) para. 9184 (D.Neb.1980), contains virtually no discussion of the law or the application of the law to the facts and is simply unpersuasive.

In reaching the conclusion that the Massachusetts Mutual commissions were earned by and were income to Hagy, not the Hagy Agency, the court applies no "bright-line" test but simply answers the question of which person or entity in fact controlled the earning of the income. The United States has urged the court to follow *Johnson v. Commissioner*, 78 T.C. 882 (1982), *aff'd*, 734 F.2d 20 (9th Cir.1984), *cert. denied*, 469 U.S. 857, 105 S.Ct. 185, 83 L.Ed.2d 119 (1984) in which the tax court stated:

An examination of the case law from *Lucas v. Earl* hence reveals two necessary elements before the corporation, rather than its service-performer employee, may be considered the controller of the income. First, the service-performer employee must be just that—an employee of the corporation whom the corporation has the right to direct or control in some meaningful sense. See *Vnuk v. Commissioner*, 621 F.2d 1318, 1320–1321 (8th Cir.1980), affg. a Memorandum Opinion of this Court; *Vercio v. Commissioner, supra.* Second, there must exist between the corporation and the person or entity using the services a contract or similar indicium recognizing the corporation's controlling position. See *Pacella v. Commissioner*, 78 T.C. 604 (1982); *Keller v. Commissioner*, 77

T.C. 1014 [1981], appeal filed (10th Cir., Apr. 2, 1982).

*Id.* at 891 (footnotes omitted). Consequently, if the court followed *Johnson,* the absence of an employment contract between Hagy and the Hagy Agency automatically would result in the income being attributed to Hagy, as would the absence of a contract between the Hagy Agency and Massachusetts Mutual or "similar indicium" recognizing the Hagy Agency's "controlling position." The latter of these two requirements seemingly would result in income generated by agents for undisclosed principals being attributed to the agents. The court finds it unnecessary, however, to decide the case relying solely on the two factors set forth in *Johnson,* as the combination of those factors with the other factors above demonstrates that Hagy, not the Hagy Agency, controlled the earning of income.

## II.

 A penalty of $1093.83 was imposed pursuant to 26 U.S.C. § 6653(a), which then provided for the imposition of an additional amount equal to five percent of any under payment in the case of negligence. Any addition to tax imposed by the Commissioner under that section is "presumptively correct and must stand unless the taxpayer can establish that he was not negligent." *Hall v. Commissioner,* 729 F.2d 632, 635 (9th Cir.1984). Hagy contends that he was not negligent because he acted upon the "advice of his certified public accountant who prepared the return with a good faith understanding and belief that the [commission] income was taxable to the corporation." Hagy Brief at 15–16. Although that reliance might have avoided the negligence penalty had the negligence penalty been based solely upon the manner in which the Massachusetts Mutual income was handled, *see Heasley v. Commissioner,* 902 F.2d 380 (5th Cir.1990); *Betson v. Commissioner,* 802 F.2d 365 (9th Cir.1986) (Kennedy, J.), the penalty also was based upon a sizable alleged loss that did not in fact occur. Hagy claimed a loss which included equipment with a basis of $22,-100.00, although the equipment was neither

sold nor otherwise disposed of during the tax year. Hagy blithely explains that inclusion of the equipment in the loss calculations resulted from "arithmetic errors in computation of basis." That explanation is simply insufficient to establish that he was not negligent.

## III.

For the reasons stated above, the court finds that the disputed commission income from Massachusetts Mutual was properly attributed to Hagy, rather than the Hagy Agency, and that Hagy has failed to demonstrate that the under payment of his taxes was not due to his negligence.