WILLIAM A. THOMPSON, JR., AND BETTY A. THOMPSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Thompson v. Commissioner
Docket No. 2335-82.
United States Tax Court
T.C. Memo 1983-487; 1983 Tax Ct. Memo LEXIS 297; 46 T.C.M. (CCH) 1109; T.C.M. (RIA) 83487; August 16, 1983. *297 Held:Sec. 162, I.R.C. 1954, deduction for payments made to avoid damage to business reputation determined. Similar payments motivated by sense of integrity and to maintain and enhance personal reputation nondeductible. Frederick L. Russell and Robert E. Stroud, for the petitioners. William L. Ringuette, for the respondent. WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION WHITAKER, Judge: Respondent determined a deficiency in petitioners' income tax for the year 1978 in the amount of $17,445.85. The deficiency results from the disallowance by respondent of a deduction under section 162[1] *298 for an alleged business expense in the amount of $48,722.39, representing the aggregate of payments made by William A. Thompson, Jr. (petitioner), during the year as voluntary payments of debts of a bankrupt corporation formerly owned by petitioner and his father. As a preliminary issue, petitioners assert that their trial strategy has effected a shift in the burden of proof from petitioners to respondent. FINDINGS OF FACT Some of the facts have been stipulated. Petitioners are husband and wife, and at the time the petition was filed they resided in Wise, Virginia. Petitioners' joint Federal income tax return for the year 1978 was filed on the cash basis method of accounting.
Petitioner for many years has been a civil engineer specializing in matters related to the mining of coal primarily in the southwest Virginia and southeastern Kentucky coal fields. Thompson's business in 1978 and for a number of years before that was conducted through Thompson & Litton, Inc., a Virginia professional corporation, of which petitioner was a stockholder, director, and since *299 1964 the president and principal developer of business. This corporation succeeded a professional partnership between petitioner and John W. Litton (Litton). Although engineering work is conducted in the corporate name, the individual license of each of the engineers (including petitioner) who conduct the corporation's work must be used as with other professional corporations. The business depends largely on the personal reputation of the individual professional employees. In this case, petitioner and Litton have throughout their joint practice of engineering established and maintained the highest reputation for skill, honesty and integrity. The success of the firm must be attributed in major part to petitioner's personal leadership, professional efforts, and business and personal reputation and prestige. Cardinal Gem Issue
In 1964 petitioner acquired one-half of the stock of Cardinal Gem Coal Company, Inc. (Cardinal Gem), the other one-half of which was owned by petitioner's father. Cardinal Gem was operating a coal mine on land in Kentucky when acquired, but it suffered financial reverses and by the end of 1966 was insolvent. Certain of its outstanding loans had been *300 guaranteed by petitioner and while petitioner was not at first active in the business, his connection became known in the Virginia-Kentucky coal mining business. Petitioner took charge of the corporation in order to try to sell the corporate assets in order to pay the debts, including those obligations of Cardinal Gem guaranteed by petitioner. At that time petitioner did not have sufficient net worth or liquid assets to pay his contingent liabilities on the guaranteed obligations. In 1967 petitioner held a meeting with Cardinal Gem's general creditors and persuaded them to give petitioner an opportunity to raise funds for payment of the obligations through an orderly sale of the business assets. These efforts were unsuccessful and ultimately Cardinal Gem was placed in bankruptcy with final liquidation of its assets occurring in 1970. With petitioner's "financial assistance" (according to the stipulation), all of the obligations of Cardinal Gem which had been guaranteed by petitioner were liquidated and petitioner was thereby able to avoid personal bankruptcy. During the course of petitioner's efforts to liquidate Cardinal Gem, petitioner made representations to the unsecured *301 creditors that he would in some fashion satisfy the unpaid debts because of petitioner's conclusion that he was "morally bound" to do so. The parties stipulated that those representations were unenforceable under the Virginia Statute of Frauds. [2] None of the general creditors attempted through legal means to collect from petitioner the unpaid indebtedness of Cardinal Gem owed to them, although at least one creditor, J. D. Nicewonder, continually sought to embarrass petitioner and his firm over the unpaid indebtedness until this creditor was finally paid in 1977 or 1978. There were, however, a number of creditors who simply accepted the bankruptcy and never in any fashion indicated to petitioner or to Thompson & Litton any concern over losses in the bankruptcy of Cardinal Gem. Cardinal Gem had done business generally in the same area as Thompson & Litton and many of the creditors of Cardinal Gem were clients of Thompson & Litton or did business with its clients. Petitioner was greatly concerned with his "moral obligation" to see that all of his creditors were repaid and felt that his personal reputation was or would become tarnished by his *302 inability to arrange for repayment. He considered that his personal credibility was at stake and payment of the Cardinal Gem debts became almost an obsession. Some payments were made by petitioner out of his own funds in years prior to 1978. The other stockholders and executives of Thompson & Litton also became concerned that this matter was adversely affecting petitioner's ability to carry on his business and might thereby adversely affect the reputation or business success of Thompson & Litton. They also were directly concerned about the efforts of Mr. Nicewonder to embarrass petitioner and Thompson & Litton in order to force payment of the indebtedness owed to him. At a time unspecified subsequent to the bankruptcy but not later than the year 1978, petitioner was invited by a business identified in the record only as Island Creek to discuss the possibility of Thompson & Litton acting as engineer and project manager to supervise the development of a housing project for employees of Island Creek. Island Creek and acquired a coal sales company which had been a creditor of Cardinal Gem, and there remained unpaid on that indebtedness slightly over $3,000. [3] At the initial meeting *303 with the Island Creek officials, petitioner recognized one of its executives as an individual who, as an executive of the coal sales company, had participated in discussions between petitioner and the creditors of Cardinal Gem. Petitioner recalled having given his personal assurance to this individual that the indebtedness would be paid. Petitioner felt "embarrassment and stress" at meeting this official and was afraid that this circumstance might adversely affect the opportunity of Thompson & Litton to obtain the employment unless the balance due on the debt was paid. The debt was paid, and Thompson & Litton was awarded the job, which was very profitable. There is no evidence to support petitioner's concern that the unpaid debt would actually have had any effect on the decision to employ Thompson & Litton, but his concern was real and was business related. At a meeting of the executive committee of Thompson & Litton on December 9, 1977, Litton reported that embarrassment *304 was being caused to Thompson & Litton because of the unpaid debts of Cardinal Gem to certain to Thompson & Litton's clients, more specifically the following: Caledonia Coal Company
J. D. Nicewonder
Flat Top Insurance Company
Patterson & Berger
Kentucky Utilities Company
Stowers Machinery Company
Kentucky Mine Supply Company
Standard Oil Company
Mine Safety Applicances Company
E. D. Vicars
L & N Railroad
Whayne Supply Company
National Electric Coil
National Bank of Middlesboro
According to the minutes of the meeting, petitioner indicated his desire to pay these former creditors, but that he had been unable to obtain necessary financing to do so. He also stated that if these designated clients of Thompson & Litton were to be paid, he would feel obligated to pay all the other creditors of Cardinal Gem. The executive committee thereupon authorized a loan to petitioner of funds sufficient to take care of all of the unpaid debts of Cardinal Gem. A portion of the loan proceeds was used in 1978 to pay certain former Cardinal Gem creditors the amounts of money listed in an attachment to petitioner's 1978 income tax return. Of the above-listed clients of *305 Thompson & Litton, the following Cardinal Gem creditors were paid the amounts indicated during the year 1978: Creditor
Amount Paid
Flat Top Insurance Company
$ 910.23
Stowers Machinery Company
172.32
[4] Chevron 2,303.46
Whayne Supply
1,402.33
The National Bank
9,157.97
Kentucky Mine Supply
3,794.49
[5] Island Creek 3,180.00
National Electric Coil
713.13
$21,633.93
We find as a fact that payment by petitioner in 1978 to these clients of Thompson & Litton of the unpaid balance of the debts owed by Cardinal Gem was in the business interest of Thompson & Litton and of petitioner as president and a principal executive officer of Thompson & Litton. We further find that payment in 1978 of the other former creditors of Cardinal Gem listed on the attachment to petitioner's income tax *306 return served no substantial business interest of Thompson & Litton or of petitioner, but was made by petitioner to satisfy his sense of personal integrity, moral obligation and to treat equally Cardinal Gem's former creditors. There is no evidence that payment or failure to pay these other former creditors of Cardinal Gem had or would have had any direct relationship to or effect upon petitioner's professional reputation or that of Thompson & Litton. Burden of Proof Issue
The explanation of the adjustments to petitioner's tax liabilities contained in the statutory notice reads as follows: a. The deduction on Schedule C for payments made to creditors of Cardinal Gem Coal Company, Inc. is not allowable. Payments of a corporate obligation by a non-corporate guarantor are not deductible under Section 162 of the Internal Revenue Code. Therefore, your taxable income is increased $48,722.39. b. Payments made as a non-corporate guarantor of corporate obligations are allowable as short-term capital losses. Therefore, a capital loss limited to $3,000 is allowable for guaranteed payments made to the creditors of Cardinal Gem Coal Company, Inc. Accordingly, *307 your taxable income is decreased $3,000.00. The explanation contained in petitioner's 1978 tax return for the $48,722.39 deduction states in part that: Therefore, in an effort to prevent the failure of Cardinal Gem Coal Company, Inc., I met with its creditors in February, 1967 and personallyguaranteed full payment of the obligations of the company. * * * In consideration of my guarantee, the creditors allowed the Company to sell its assets and authorized additional time for payment of its business debts. * * * [Emphasis supplied.] The petitioner in this case describes the error of respondent in the following language: 4. The determination of income tax set forth in said notice of deficiency is based on the following error: the Commissioner erred in disallowing petitioners' $48,722.39 business deduction for payments to creditors of Cardinal Gem Coal Company. In the stipulation, the parties agreed that petitioner was not a guarantor of any part of this sum of $48,722.39. OPINION Cardinal Gem
In general, payment of another's debts is not an *308 ordinary and necessary expense deductible under section 162. Welch v. Helvering,290 U.S. 111 (1933); Grauman v. Commissioner,357 F.2d 504 (9th Cir. 1966). However, "[e]xpenditures incurred by a taxpayer to protect his business reputation or avoid unfavorable business or commercial publicity have been regarded as deductible." Marks v. Commissioner,27 T.C. 464, 467 (1956). A payment to protect personal reputation is not deductible. Marks v. Commissioner,supra at 467. Only to the extent that any of the items paid in 1978 were "integral" to petitioner's business, Webb v. United States,560 F. Supp. 150, 158 (S.D. Miss. 1982), can we allow to petitioners a section 162 deduction. We have found as facts that payments aggregating $21,633.93 were made to protect the business reputations of petitioner and of Thompson & Litton. Petitioners were entitled to a deduction in the year 1978 in this amount. [6] Petitioners have failed to show that the balance of the claimed deduction of $48,722.39 or payments to former creditors of Cardinal Gem amounting to $27,088.46 has the necessary connection to *309 petitioner's business or to the business of Thompson & Litton to be deductible. The record in fact establishes that payment was not integral to the business of Thompson & Litton. Welch v. Helvering,supra;Grauman v. Commissioner,supra;Cloud v. Commissioner,T.C. Memo. 1976-27. Burden of Proof
Upon the filing of the stipulation reciting that petitioner had not guaranteed any of the indebtedness included in the sum paid in 1978 to the former creditors of Cardinal Gem, petitioners raised the issue that respondent had conceded that the statutory notice was arbitrary, unreasonable and erroneous because based on respondent's "guarantor determination." Thus, petitioners contended that any other theory which respondent might advance for nondeductibility would be a new issue on which the burden of proof would be upon respondent. Petitioner seeks to come within the well established rule, illustrated for example in Tauber v. Commissioner,24 T.C. 179 (1955), that respondent has the burden of proof on *310 a new issue raised subsequent to the issuance of the statutory notice. Petitioners have both misread the cases and the statutory notice. Deductions of $48,722.39 were claimed on petitioners' return as a business deduction under section 162 because of petitioner Thompson's "personal guarantee." Respondent determined that petitioners were not entitled to a section 162 deduction. Petitioners understood that the pleadings are so framed; and petitioners were clearly ready to proceed to trial and did proceed to trial, on this issue when we ruled the burden of proof had not shifted. The language in the statutory notice which petitioners sought to use to their advantage in the trial simply responds to the volunteered explanation of the deduction included by petitioners in their tax return. The fact that respondent's counsel responded to the requirements of Rule 91 [7] by agreeing that petitioner Thompson's guaranty was unenforceable under applicable State law did not make the statutory notice arbitrary or erroneous and did not satisfy petitioners' burden of proof. Under Rule 142, the burden of proof was upon petitioners to establish entitlement to a deduction under section 162 for the payments *311 made under the circumstances set forth in our findings. No new issue was raised by respondent and the burden of proof did not shift. [8] We reaffirm our ruling made from the bench. Gossett v. Commissioner,22 B.T.A. 1279 (1931), affd. 59 F.2d 365 (4th Cir. 1932); Stoller v. Commissioner,T.C. Memo. 1983-319. As respondent points out in his reply brief, petitioners' position can be said to challenge the $3,000 short-term capital loss allowed by respondent in the statutory notice. However, the brief states in part: "Respondent certainly is not raising the issue * * *." We are not required to raise sua sponte any issue not presented to us by one of the parties. We do not choose to do so here.
Petitioners are entitled to a deduction under section 162 in *312 the amount of $21,633.93 on account of payment of debts of Cardinal Gem. Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended.↩
2. Va. Code sec. 11-2(4)↩(1919).
3. Exhibit 6-F does not list Island Creek as a creditor of Cardinal Gem and the record does not contain the name of the coal sales company it acquired. Respondent makes no point of this apparent discrepancy.↩
4. We assume the names "Chevron" and "Standard Oil Company" refer to the same company, and that "The National Bank" and "National Bank of Middlesboro" are identical. ↩
5. Island Creek is not listed in the minutes of the December 9, 1977, meeting of the executive committee. However, petitioner's testimony establishes the business context in which this debt was paid.↩
6. Rev. Rul. 73-226, 73-1 C.B. 62↩, undercuts respondent's position to this extent.
7. All rule references are to the Tax Court Rules of Practice and Procedure. ↩
8. The cases of Kaufman v. Commissioner,372 F.2d 789 (4th Cir. 1966), revg. in part and remanding a Memorandum Opinion of this Court; and Cohen v. Commissioner,266 F.2d 5↩ (9th Cir. 1959), remanding a Memorandum Opinion of this Court, are not applicable here.