**Samuel J. GRAUMAN and Aurora G. Grauman, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 20008.**

United States Court of Appeals
Ninth Circuit.

Feb. 25, 1966.

Scott P. Crampton, Richard S. Doyle, of Korner, Doyle, Worth & Crampton, Washington, D. C., for petitioners.

John B. Jones, Jr., Acting Asst. Atty. Gen., Lee A. Jackson, Meyer Rothwacks, Robert H. Solomon, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before MADDEN, Judge of the Court of Claims, and MERRILL and BROWNING, Circuit Judges.

MERRILL, Circuit Judge:

Petitioners, husband and wife, residents of Tucson, Arizona, here seek review of a Tax Court decision upholding income tax deficiencies asserted by the Commissioner for the years 1950, 1951 and 1952.

The husband, the primary taxpayer, is a physician practicing in Tucson. He also engages in the business of subdivision and sale of real estate.

1. *Loan to the Pet Shop*

Prior to 1951 petitioners acquired an interest in a pet shop which subsequently was incorporated. By 1951 they were the sole owners. In that year taxpayer loaned this corporation $4,328.75 to enable it to pay certain creditors. In 1953 he filed a claim for refund for the year 1951, claiming that the loan constituted a business bad debt under section 23(k) (1) of the Internal Revenue Code

of 1939.[1] The Commissioner disallowed this claim and was upheld by the Tax Court.

The "business" asserted by the taxpayer was that of lending money. In support of this assertion taxpayer argues that the substantial amount of income reported from mortgages in previous years proves that taxpayer was in the business of lending money. The Tax Court rejected this argument, stating:

> "There is just nothing in the record on which to base a conclusion that the loan to the pet shop was a business loan in that it was part of a money-loaning business petitioner was then engaged in."

We agree. While taxpayer occasionally did provide mortgage financing of home construction for purchasers of his lots, we regard this activity as a part of the real estate business rather than an independent money lending business such as would justify the claimed deduction.

### 2. *Payment of Pet Shop's Debts*

In 1951 the pet shop went out of business and liquidated its assets. In January, 1952, taxpayer paid $2,057.55 to the attorney handling the liquidation to be used for the payment of the corporation's creditors. He deducted this amount on his 1952 return as a business expense under section 23(a) (1) (A).[2] The Commissioner disallowed this deduction and was upheld by the Tax Court.

The business to which taxpayer here referred was his medical practice. He asserts that the payments constituted an ordinary and necessary business expense incurred in the practice of medicine since it was essential to preserve his professional reputation. He points out that it was generally known in Tucson that he and his wife were the owners of the pet shop and that payment of the shop's creditors was, therefore, essential to preserve his professional reputation and the goodwill of his patients.

The Tax Court states:

> "It was incumbent upon petitioner to prove that the circumstances under which the advancement to satisfy the corporation's creditors was made show that his professional business would be threatened by the failure to pay his creditors."

It ruled that he had failed to meet this burden.

Taxpayer here seems to take the position that as a matter of law payment of debts of a wholly owned corporation should be allowed as an ordinary and necessary business expense by one engaged in the practice of a profession, since it is common knowledge that one's professional reputation is threatened when one fails to meet his moral obligations.

We cannot agree that common knowledge would support such a broad legal principle. While community disapproval

---

[1]. Subsection (k) of section 23 reads:
"(k) [as amended by § 124(a), Revenue Act of 1942]. **Bad Debts.—**
(1) **General rule.—**Debts which become worthless within the taxable year; * * *. This paragraph shall not apply in the case of a taxpayer, other than a corporation, with respect to a non-business debt, as defined in paragraph (4) of this subsection.
\* \* \* \* \*
(4) **Non-business debts.—**In the case of a taxpayer, other than a corporation, if a non-business debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months. The term 'non-business debt' means a debt other than a debt evidenced by a security as defined in paragraph (3) and other than a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business."

[2]. "§ 23. Deductions from gross income.
In computing net income there shall be allowed as deductions:
(a) [as amended by § 121(a), Revenue Act of 1942, c. 619, 56 Stat. 798]. **Expenses.—**
(1) **Trade or business expenses.—**
(A) **In General.—**All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * *."

might well be expected to follow from one's failure to recognize moral responsibility for a debt owing to an impoverished widow, it would not, in our judgment, necessarily result from failure to assume responsibility for such impersonal matters as taxes, utility charges or debts to distant creditors. Some relationship between the debt paid and the business or profession should be shown.

The Tax Court noted that taxpayer could not remember who the pet shop's creditors were at the time of dissolution. It states:

> "He could only say some were Tucson creditors, and he volunteered: '[i]t is very likely there were phone bills and light bills and that sort of thing. I can't be sure.' Other evidence in the form of a list of creditors as of November 26, 1951, (not very well identified) introduced by petitioner would indicate the pet shop owed around three or four thousand dollars at the time it dissolved and the major portion of this was owed for taxes, to utility companies, and to creditors located outside of Tucson."

The court concluded:

> "Respondent's determination is presumptively correct. We cannot say from the facts presented that payment of the pet shop's bills was essential to preserve petitioner's professional business. The pet shop was not a business venture that was started by petitioner. It is not clear to us that petitioner's professional reputation would suffer merely because he bought the stock of a corporation that ultimately failed without being able to pay its debts in full. [The Tax Court by footnote here notes that petitioner suffered a loss of $11,257.55 on the pet shop stock, which he took as a capital loss in 1952.] The circumstances surrounding the payment of the corporation's creditors are totally insufficient to warrant its being considered 'ordinary and neces-

sary expenses' within section 23 (a) (1) (A)."

We agree.

 3. *Club Dues*

For each of the taxable years taxpayer deducted as a business expense 75 percent of his dues paid to the Old Pueblo Club. The Commissioner allowed $100 each year and disallowed the rest. This was upheld by the Tax Court.

This was not error. Taxpayer's recollection of the nature of his use of the club was entirely too vague to warrant upsetting such a determination.

Taxpayer contends that the Tax Court throughout has deferred excessively to the presumption of correctness attaching to the Commissioner's rulings. We cannot agree. We find the reasoning of the Tax Court upon the record persuasive.

Affirmed.