J.R. BETSON, Jr. and Joan Sue Betson, Petitioner-Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE SERVICE, Respondent-Appellee.

No. 85–7053.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 4, 1986.

Decided Oct. 17, 1986.

Ronald K. Van Wert, Newport Beach, Cal., for petitioner-appellant.

Martha B. Brissette, William Whitledge, Dept. of Justice, Washington, D.C., for respondent-appellee.

Before KENNEDY, SKOPIL, and ALARCON, Circuit Judges.

KENNEDY, Circuit Judge:

Taxpayers J.R. Betson, Jr. and Joan Sue Betson (collectively "Betson") appeal the Tax Court's disallowance of deductions for 1970–1972 claimed under I.R.C. §§ 162, 165, and 212 in connection with the operation of certain retail liquor stores in New Mexico. The Tax Court found that the stores were in fact operated by Bethinol, Inc., a New Mexico corporation wholly owned by the taxpayers and formed "[t]o engage in the retail and wholesale sale of alcoholic beverages of all types throughout the State of New Mexico and to own and operate bars, lounges and package stores throughout the State of New Mexico." The Tax Court held that the expenses giving rise to the deductions arose in the

course of the corporation's trade or business, and that any allowable deductions therefore belonged to the corporation and not to the individual taxpayers. The court also upheld imposition of a negligence penalty against the taxpayers under I.R.C. § 6653(a). We affirm in part and reverse in part.

The deductions claimed are attributable to the operation of four stores: Winrock Economy Liquors (also known as Western Wine and Liquor Marts, No. I), an outlet in the Bellas Hess Department Store (also known as Western Wine and Liquor Marts, No. III), Western Liquors (also known as Western Wine and Liquor Marts, No. IV), and an outlet at a Pizza Hut (also known as Western Wine and Liquor Marts, No. II). The first two businesses were acquired by Betson prior to the formation of Bethinol in January 1970. While the Tax Court found that all four stores were in fact operated by Bethinol after its formation, the licenses for the two original stores remained at all times in Betson's name. The other two outlets were acquired after the formation of Bethinol, with the corporation as licensee.

The liquor stores were less than successful. The parties stipulated in the Tax Court that the four stores had combined operating losses of $37,000 in 1970 and $25,000 in 1971. The parties also stipulated that Betson expended $175,365.89 in connection with the stores in 1972, of which $138,478.68 was deductible by either Betson or Bethinol depending on the outcome of this case. Of the $175,365.89, the single largest expenditure by the taxpayer was $62,292 paid to settle suits against himself and Bethinol filed or threatened by wholesale liquor distributors through 1971. A few of Betson's checks bore the notation "Loan to Corp.," while others were reflected on Bethinol's books as notes payable to Betson.

 In reviewing the Tax Court's findings that neither the losses associated with the stores nor the sums expended on the liquor operations by Betson were deductible, this court reviews de novo questions of law, namely the construction of provisions of the statute itself. *See Roemer v. Commissioner,* 716 F.2d 693, 696 (9th Cir. 1983) (considering propriety of distinguishing personal and professional reputation under I.R.C. § 104(a)(2)). The taxpayer, however, bears the burden of showing that he is entitled to a particular deduction, and the determination that he has failed to produce sufficient evidence to support a deduction is one of fact subject to reversal only if clearly erroneous. *Zmuda v. Commissioner,* 731 F.2d 1417, 1421 (9th Cir.1984).

 Betson does not contest on appeal, as he did below, that Bethinol exists as a separate taxable entity. A corporation exists for tax purposes if formed for a business purpose or if it carries on business after incorporation. *Moline Properties, Inc. v. Commissioner,* 319 U.S. 436, 438–39, 63 S.Ct. 1132, 1133–34, 87 L.Ed. 1499 (1943). In this case the Tax Court found that following its founding in 1970 Bethinol in fact operated all four liquor stores as part of a unified enterprise, a finding clearly supported by the record. The court observed, among other things, that Bethinol operated the stores under a common trade name (Western Wine and Liquor Marts); that all bank accounts were in Bethinol's name, and gross receipts from all stores were deposited in these accounts; that Bethinol purchased the beverages for all four stores; that Bethinol's inventory included merchandise on hand in all four stores; and that Bethinol's corporate tax returns were based on income and expenses from all four stores. Consequently, this appeal focuses on whether Betson is entitled to the claimed deductions even though he chose to operate his liquor stores through a corporation recognized for tax purposes.

Betson does not clearly distinguish between his claims under I.R.C. § 162(a), I.R.C. § 165, and I.R.C. § 212. He argues, however, that he should be able to deduct all expenditures by him in 1972, on the ground that the payments were necessary to protect the businesses and licenses. He also argues that he should be able to deduct all payments to creditors of the Win-

rock and Bellas Hess stores, as well as the 1970 and 1971 losses attributable to those stores, because he believed himself personally liable for their debts as the record licensee of those stores. He also suggests that he, rather than Bethinol, is entitled to deduct expenditures to pay expenses and cover losses associated with the stores because Bethinol operated the stores only as his agent. The Commissioner contends that no deduction is permissible under I.R.C. § 162(a) because the expenses paid by Betson arose in connection with Bethinol's trade or business. The Commissioner characterizes Betson's payments on behalf of the liquor stores as either contributions to the capital of Bethinol or loans to the corporation, neither of which give rise to a current deduction. The Commissioner argues, moreover, that since the expenditures were capital and not ordinary and necessary, they are also not deductible under I.R.C. § 212.

■ I.R.C. § 162(a) provides a deduction for "ordinary and necessary" expenses incurred "in carrying on any trade or business...." As a general rule, the trade or business of a corporation is not that of its shareholders. *See Whipple v. Commissioner,* 373 U.S. 193, 202, 83 S.Ct. 1168, 1174, 10 L.Ed.2d 288 (1963). Shareholders, unless they are traders, do not engage in a trade or business when they invest in the stock of a corporation. *Id.* Consequently, shareholders are generally not permitted to deduct under section 162(a) sums advanced to a corporation to meet its expenses or pay its debts. *See, e.g., Grauman v. Commissioner,* 357 F.2d 504, 505–06 (9th Cir.1966); 7 Mertens, *Law of Federal Income Taxation* § 38.22, at 50 (1985). Such expenditures, if not loans, are generally considered capital contributions. *See* I.R.C. § 263; Treas.Reg. § 1.263(a)–2(f) (voluntary contributions by shareholders for any corporate purpose are nondeductible capital expenditures).

■ These rules are consistent with the principle that if a taxpayer chooses to conduct business through a corporation, he will not subsequently be permitted to deny the existence of the corporation if it suits him for tax purposes. *See, e.g., Moline Properties, Inc. v. Commissioner,* 319 U.S. 436, 438–39, 63 S.Ct. 1132, 1133–34, 87 L.Ed. 1499 (1943) (individuals adopting corporate form must accept tax disadvantages); *O'Neill v. Commissioner,* 271 F.2d 44, 49 (9th Cir.1959) (declining to ignore corporate entity). In particular corporate shareholders will not be permitted to claim deductions for ordinary and necessary expenses incurred by the corporation even though paid by the shareholders. *See Elot H. Raffety Farms, Inc. v. United States,* 511 F.2d 1234, 1239 (8th Cir.), *cert. denied,* 423 U.S. 834, 96 S.Ct. 57, 46 L.Ed.2d 52 (1975); *Dodd v. Commissioner,* 298 F.2d 570, 577–78 (4th Cir.1962); *Ihrig v. Commissioner,* 26 T.C. 73, 76 (1956); *cf. O'Neill,* 271 F.2d at 48–49 (no loss deduction allowed).

■ There are exceptions to these principles. If Betson paid corporate expenses in the ordinary and necessary course of some trade or business *of his own,* a deduction would be permitted. *See, e.g., Madden v. Commissioner,* 40 T.C.M. (CCH) 1103, 1111 (1980); *Lohrke v. Commissioner,* 48 T.C. 679, 688–89 (1967); *cf. O'Neill,* 271 F.2d at 48 (considering loss deduction). Payments made, however, with the purpose of keeping in business a corporation in which the taxpayer holds an interest are not deductible. *Madden,* 40 T.C.M. at 1111. *Cf. Dodd,* 298 F.2d at 576–77 (deduction disallowed where expenses of corporation are only "incidentally related" to taxpayer's own trade or business).

■ In this case the Tax Court found that Betson's dominant motive in paying the expenses of the liquor stores "was to provide operating capital and perpetuate or revitalize the liquor operations carried on by Bethinol." This conclusion is not clearly erroneous, in light of Betson's own representations that he acted to protect the corporation and hoped for repayment in the future. The Tax Court also found that any connection between paying the expenses of the liquor operations and Betson's own trade or business as a medical doctor was

too attenuated to support the deduction. This finding, too, is not clearly erroneous. *Compare Dinardo v. Commissioner,* 22 T.C. 430 (1954) (medical partnership permitted to deduct expenses of hospital they organized and in which they practiced because of close business connection between hospital and their medical practice), *with Dodd,* 298 F.2d at 576–77 (deduction disallowed where petitioner's business only "incidentally related" to that of corporation), *and Madden,* 40 T.C.M. at 1111 (doctor not allowed deduction for payments made to support auto business). The Tax Court rejected the contention that failure to pay the debts of the liquor business would adversely affect Betson's credit standing and therefore his own trade or business as a doctor. *See Grauman,* 357 F.2d at 505–06 (must show relationship between debt paid and one's own business or profession); *cf. Lutz v. Commissioner,* 282 F.2d 614 (5th Cir.1960) (deduction permitted where the corporation's business was formerly carried on by the taxpayer and was closely identified with him personally, and the corporation's credit depended on that of the taxpayer). This conclusion—especially when considered with Betson's failure to show he was personally liable for the debts—is also not clearly erroneous.

Betson urges, despite these findings, that he is entitled to deduct his liquor expenditures because Bethinol, notwithstanding its separate tax existence, operated the stores either as his agent, or as part of a joint venture between himself and the corporation. An agency relationship may be found, however, only when the facts indicate the corporation carried out only "the normal duties of an agent." *National Carbide Corp. v. Commissioner,* 336 U.S. 422, 437, 69 S.Ct. 726, 734, 93 L.Ed. 779 (1949). The same facts that establish the separate tax existence of Bethinol, however, indicate that the corporation operated the stores, as the Tax Court found, in its own name and for its own account. That Betson came to believe his status as record licensee of two of the stores rendered him liable for some of the debts of the stores, without more, does not compel a different result. *Cf. United States v. Creel,* 711 F.2d 575, 579 (5th Cir.1983), *cert. denied,* 464 U.S. 1044, 104 S.Ct. 714, 79 L.Ed.2d 177 (1984) (suggesting corporation meeting *Moline* test, and not its sole shareholder, would be entitled to deduct losses even where creditors pierced the corporate veil and satisfied claims from shareholder's personal estate).

Betson's last theory under which he might claim a deduction under section 162(a) is that of a joint venture. He argues that, as licensee of the Winrock and Bellas Hess stores, he was personally liable for their debts and should therefore be permitted to deduct losses from the operation of these stores as, in effect, a joint venturer with Bethinol. *See Horner v. Commissioner,* 35 T.C. 231 (1960) (allowing loss deduction under section 165(c)). In *Horner* the individual taxpayer purchased, on his own credit, merchandise from Borg-Warner which was then sold through taxpayer's corporation. Borg-Warner never dealt with the corporation, and in fact specifically refused to ship to and sell to the corporation, choosing instead to sell directly to the taxpayer, its franchisee. On these facts, the Tax Court allowed a deduction, under I.R.C. § 165(c), of the costs of settling a suit between the taxpayer and Borg-Warner.

The Tax Court in the case before us rejected the argument that the possibility that Betson might be personally liable for some of the liquor stores' debts permitted deduction under section 162(a), pointing out that such liability did not itself establish that the expenditures were related to a trade or business of Betson's. This approach is consistent with at least one district court opinion in this circuit. *See Margolis v. United States,* 570 F.Supp. 170 (N.D.Cal.1983) (denying interest deduction under section 162 where attorney, practicing through a professional corporation, personally borrowed funds and loaned them to clients of the corporation). In effect Betson is asking us to find, solely because he believed himself liable for a portion of the liquor store debts, that he, as well as Bethi-

nol, was engaged in the retail liquor business. Absent any evidence that Betson devoted substantial time to the liquor business, *see, e.g., Snyder v. United States,* 674 F.2d 1359, 1364 (10th Cir.1982), or could fairly be said to have had as an "occupation" the operation of retail liquor stores, *see Groetzinger v. Commissioner,* 771 F.2d 269, 273–74 (7th Cir.1985), *cert. granted,* ―― U.S. ――, 106 S.Ct. 1456, 89 L.Ed.2d 714 (1986) (trade or business is a person's occupation or livelihood), or held himself out as engaged in that business other than simply through the corporation, *cf. Gajewski v. Commissioner,* 723 F.2d 1062, 1065–67 (2d Cir.1983), *cert. denied,* 469 U.S. 818, 105 S.Ct. 88, 83 L.Ed.2d 35 (1984) (trade or business requires holding oneself out as engaged in the sale of goods and services), we decline to hold that Betson's belief that he might be personally liable for any portion of the liquor store obligations requires us to reverse the Tax Court and find as a matter of law that Betson engaged in the retail liquor business. *See also Ihrig v. Commissioner,* 26 T.C. 73, 76 (1956) (corporate expenses paid by shareholder in part to avoid personal liabilities not deductible as his own business expenses). In any event Betson has not shown that he was in fact personally liable for any portion of the corporate obligations he met, but only that the licenses which were not formally transferred to the corporation might be looked to as security for the debts of the stores. *See State ex rel. Clinton Realty Co. v. Scarborough,* 78 N.M. 132, 429 P.2d 330, 333 (1967) (liquor license tangible personal property subject to levy to satisfy a judgment against licensee). Accordingly, the Tax Court did not err in concluding that Betson is not entitled to deduct his expenditures on the liquor stores under I.R.C. § 162(a).

Betson also claims his expenditures in connection with the liquor stores are deductible under I.R.C. § 212. Section 212 permits an individual taxpayer to deduct certain nontrade or nonbusiness expenses incurred in connection with income-producing activities or for the maintenance and conservation of property held for the production of income. Betson argues that, because he paid expenses and settled debts of the liquor stores in connection with profit-making activities and to protect and conserve the liquor businesses and licenses, he should be permitted a deduction under this section.

Betson argues that *United States v. Gilmore,* 372 U.S. 39, 83 S.Ct. 623, 9 L.Ed.2d 570 (1963), permits a deduction under section 212 where the origin of an expense is "business" rather than "personal" activity. In this regard he points out that one of the reasons for enacting the predecessor to section 212 was to avoid tying deductibility to the existence of a trade or business. *See Gilmore,* 372 U.S. at 44–45, 83 S.Ct. at 626–27. However, were the only requirement for deductibility under section 212 that the claimed expense be "business" and not "personal" in nature, that section would, for individual taxpayers, obliterate the distinction developed under section 162(a) between paying the expenses of one's own business and defraying those of one's corporation. The statute's requirement that deductible expenses under section 212 be ordinary and necessary makes clear that no such radical change in the deductibility of corporate expenses was intended. The regulations under section 212 provide that "[c]apital expenditures are not allowable as nontrade or nonbusiness expenses." Treas.Reg. § 1.212–1(n). This was made clear in a decision based on the transaction considered in *Gilmore* itself. *See Gilmore v. United States,* 245 F.Supp. 383, 383 (N.D.Cal.1965) (capital expenditures not deductible under the predecessor to section 212; rule "equally applicable to business and nonbusiness activity") (quoting *Spangler v. Commissioner,* 323 F.2d 913, 919 (9th Cir.1963)); *see also Honodel v. Commissioner,* 722 F.2d 1462, 1464–66 (9th Cir.1984) (investment fees paid for advisory work rendered in the process of acquisition are capital and not deductible under section 212); *Cruttenden v. Commissioner,* 644 F.2d 1368, 1372–73 (9th Cir. 1981) (expenses incurred in defense of title are capital and not deductible under section

212). Such expenditures are simply not "ordinary and necessary" from the standpoint of the shareholder. *See also* Treas. Reg. § 1.263(a)–2(f) (voluntary capital contributions by a shareholder "for any corporate purpose" are not currently deductible).

■ The Tax Court did not abuse its discretion in characterizing as capital contributions at least those sums advanced by Betson to further Bethinol's business that were not loans or advanced in his capacity as guarantor of the corporation's debts. In determining whether payments to—or, as in this case, on behalf of—a corporation are capital contributions, a dominant factor is the motive or purpose of the transferor in making the payments. *See Washington Athletic Club v. United States*, 614 F.2d 670, 674–75 (9th Cir.1980); *see also Lohrke v. Commissioner*, 48 T.C. 679, 688 (1967). Sums advanced with the intent of yielding income in future years are generally considered capital expenditures. *Cf. Encyclopaedia Britannica, Inc. v. Commissioner*, 685 F.2d 212, 214 (7th Cir.1982) (where expenditures are incurred to generate income over a period of years, they are generally considered capital). This is consistent with the characterization of capital contributions found in Treas.Reg. § 1.118.1 as including voluntary payments to a corporation requiring additional funds to conduct its business. Here, Betson's expectation that the sums advanced would be repaid when the corporation became profitable supports the Tax Court's conclusion that his "dominant motive was to provide operating capital and perpetuate and revitalize the liquor operations carried on by Bethinol."

■ Betson argues that his expenditures for the liquor stores and to settle the lawsuits were not capital because they were not made to acquire a new license or business, but rather to preserve an existing one. Section 212 does not, however, permit an individual shareholder to avoid the limit on current deductibility imposed by I.R.C. § 263 (no current deduction for capital expenditures) simply by characterizing funds advanced to his corporation as necessary to preserve or protect the corporate business. *Cf. Cruttenden*, 644 F.2d at 1372 (section 212(2) must be harmonized with section 263(a)).

Betson's primary objection, however, to treatment of his expenditures as capital, or as loans to Bethinol, is that such a characterization of them is impossible in light of his belief that he was personally liable for certain of the liquor store obligations. In support of this position, he cites *Humphrey v. Commissioner*, 91 F.2d 155, 160–61 (9th Cir.1937), in which this court held that a discharge by a shareholder of a corporate obligation for which he was "primarily responsible" could give rise to a loss deduction under the predecessor to I.R.C. § 165. The court rejected the Tax Court's characterization of these payments as capital contributions, finding they were neither voluntary nor undertaken as a surety or guarantor. *Id.* at 160–61.

While the continuing validity of *Humphrey* may be open to question in light of intervening decisions, *see Creel*, 711 F.2d at 578–81 (denying loss deduction to shareholder even though creditors could reach shareholder's personal assets to satisfy claims), it is distinguishable. We, like the Tax Court, are not convinced that New Mexico law rendered Betson primarily liable for expenses incurred by Bethinol in the course of operating any of the liquor stores. The authorities cited by Betson show only that his license could not be transferred if debts of the licensed store remained unpaid, and that liquor licenses are personal property that can be subject to attachment, execution, and security interests. *See Scarborough*, 429 P.2d at 333.

Betson, relying on *Old Town Corp. v. Commissioner*, 37 T.C. 845 (1962), argues that a "reasonable belief" on his part that he was personally liable for a portion of the liquor store debts makes his payment of those debts deductible by him as "ordinary and necessary." In *Old Town* the Tax Court permitted a corporation to deduct the cost of settling a suit against another where it reasonably believed the expendi-

ture was necessary to protect itself and the payment was made for the purpose of avoiding a potential corporate liability. *Old Town* did not consider, however, under what circumstances the settlement by a taxpayer of claims against a third person might be better characterized as capital expenditures, as is generally the case when a shareholder undertakes to settle claims against his corporation. Even assuming, however, that *Old Town* applies, Betson must show that the payments were made "for the purpose of avoiding the damages or liability" that might result from suits against him by the liquor store creditors, and not to benefit the corporation. *Old Town*, 37 T.C. at 858–59; *see Inland Asphalt Co. v. Commissioner*, 756 F.2d 1425, 1428 (9th Cir.1985) (reciting the three-part test of *Old Town*, including motivation element). The Tax Court found that Betson's primary purpose in making the payments was to benefit the corporation, a finding we deem not clearly erroneous. Thus, while fear of potential liability may have played some role in Betson's decision to pay the liquor stores' obligations, we cannot say the Tax Court erred in denying Betson a deduction under I.R.C. § 212 on the ground that his payments on behalf of the corporation were essentially capital contributions.

■ Finally, to the extent that Betson claims any of the sums deducted as losses under I.R.C. § 165, we agree with the Tax Court that no current deduction is permitted. Losses incurred by a corporation in connection with its trade or business are deductible by the corporation, not its shareholders. *Evans v. Commissioner*, 557 F.2d 1095, 1099–1100 (5th Cir.1977) (denying taxpayer-shareholder loss deduction under section 165); *O'Neill*, 271 F.2d at 48 (same; 1939 Code); *see also Creel*, 711 F.2d at 578–81 (no loss deduction for shareholder despite personal liability for debts of corporate alter ego). Further, as we have shown, the cases permitting such deductions where there is a joint venture, or where the taxpayer demonstrates he made the payment to avoid personal liability, are not applicable to this case. We of course express no opinion as to whether a deduc-

tion might be claimed in a subsequent year as, for instance, a nonbusiness bad debt or a capital loss.

■ Betson also appeals the assessment against him of a negligence penalty under I.R.C. § 6653(a). Section 6653(a) permits the Commissioner to assess a penalty of five percent of the tax due when an underpayment "is due to negligence or intentional disregard of rules or regulations...." I.R.C. § 6653(a)(1). Negligence is determined by the reasonable, prudent person standard, *Zmuda v. Commissioner*, 731 F.2d 1417, 1422 (9th Cir.1984), with the taxpayer bearing the burden of establishing that assessment of the penalty was erroneous, *id.; Hall v. Commissioner*, 729 F.2d 632, 635 (9th Cir.1984); *Hanson v. Commissioner*, 696 F.2d 1232, 1234 (9th Cir.1983) (per curiam).

■ We think that although Betson's position was incorrect, it was "reasonably debatable." *Foster v. Commissioner of Internal Revenue*, 756 F.2d 1430, 1439 (9th Cir. 1985) (holding that a negligence penalty was imposed improperly). The Supreme Court has held that while hiring an attorney or accountant does not insulate the taxpayer from negligence penalties, good faith reliance on professional advice concerning tax laws is a defense. *United States v. Boyle*, 469 U.S. 241, 105 S.Ct. 687, 693, 83 L.Ed.2d 622 (1985) ("Most taxpayers are not competent to discern error in the substantive advice of an accountant or attorney"). In this case, the record indicates that the taxpayer relied in good faith on the substantive advice of his accountant. No facts, disclosed in the record, were sufficient to charge the taxpayer with notice of the erroneous legal position asserted in his return. Thus, we reverse the imposition of the negligence penalty.

Petitioners are not permitted to claim deductions for the liquor operations under I.R.C. § 162(a), since the expenses did not arise in connection with a trade or business of their own, but rather of Bethinol. Moreover, no deduction is possible under I.R.C. § 212, since the expenditures are not "ordi-

nary and necessary," but rather either capital contributions by taxpayer to Bethinol or loans by him to the corporation. We also find no basis for a loss deduction under I.R.C. § 165(c). Finally, the negligence penalty assessed under I.R.C. § 6653(a) is reversed.

The judgment of the Tax Court is AFFIRMED IN PART and REVERSED IN PART.