JERRILYNN A. HULL, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hull v. Commissioner
Docket No. 28049-89
United States Tax Court
T.C. Memo 1991-582; 1991 Tax Ct. Memo LEXIS 630; 62 T.C.M. (CCH) 1319; T.C.M. (RIA) 91582; November 26, 1991, Filed *630 Decision will be entered for the respondent. Thomas J. O'Rourke and Charles H. Mansour, for the petitioner. Lindsey D. Stellwagen, for the respondent. PARKER, Judge. PARKER
MEMORANDUM FINDINGS OF FACT AND OPINION By statutory notice of deficiency dated September 18, 1989, respondent determined deficiencies in petitioner's Federal income taxes and additions to tax as follows: Additions to Tax
Year
Deficiency
Sec.6653(a)(1)
Sec.6653(a)(2)
Sec.6661
1984
$ 11,388
$ 569
*
$ 2,847
1985
5,270
264
*
1,318
Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect for the taxable years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. After concessions, [1] the issues remaining for decision are (1) whether petitioner is liable for additions to tax for negligence pursuant to section 6653(a)(1) and (2) for taxable years 1984 and 1985, and (2) *631 whether petitioner is liable for additions to tax for substantial understatements pursuant to section 6661 for taxable years 1984 and 1985. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The parties' stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Petitioner resided in Washington, D.C., at the time the petition was filed. Petitioner Jerrilynn A. Hull (petitioner or Mrs. Hull) and Gordon K. Hull (Mr. Hull) were married in March 1984 and remained married until Mr. Hull's death in February 1985. From June 1980 until the time of his death, Mr. Hull owned the Shenandoah, a 57-foot Chris Craft yacht. Mr. and Mrs. Hull lived together aboard the Shenandoah during 1984 and for the first two months of 1985. Mrs. Hull continued to live aboard the yacht after Mr. Hull's death in 1985. Mr. Hull reported his ownership of the Shenandoah as rental property *632 on Schedule E of his 1980 Federal income tax return. Thereafter, he reported the Shenandoah as a business asset used for charter excursions and reported income and expenses attributable thereto on Schedule C of his 1981, 1982, and 1983 Federal income tax returns. Mr. Hull reported little income but substantial tax losses from the Shenandoah on his returns for the tax years 1980 through 1983, as follows: Schedule E
Schedule C
Year
Rental Income
Gross Receipts
Loss
Loss
1980
$ 4,200
($ 11,000)
1981
$ 8,688
($ 23,703)
1982
$ 2,000
($ 47,388)
1983
$ 3,050
($ 40,466)
The $ 2,000 receipts in 1982 may not have been from charter fees, but from rental fees allegedly paid by petitioner for dockside parties aboard the Shenandoah in connection with her part-time jewelry business. [2]
*633 John Potter of John Potter & Associates (Mr. Potter) had prepared tax returns for Mr. Hull for the years 1980 through 1983 and earlier. Mr. Potter has been a tax consultant for approximately 12 years, and he and Mr. Hull had known each other since their days in the military service. After Mr. Hull purchased the Shenandoah, Mr. Potter learned that the Internal Revenue Service had audited the previous owner. In that audit, the Internal Revenue Service determined that certain expenses could be deducted because the previous owner had not lived aboard the yacht. [3] Mr. Potter advised Mr. Hull of this audit and the tax consequences of living aboard the boat. At that time Mr. Hull was not living aboard the Shenandoah and lived in West Virginia. There were no further conversations between Mr. Potter and Mr. Hull concerning whether or not Mr. Hull was living aboard the Shenandoah. However, other than occasionally running into Mr. Hull at Danker's West, a restaurant in Southwest Washington, D.C., Mr. Potter only talked to Mr. Hull once or twice a year when doing his tax returns. While the record does not establish exactly when Mr. Hull moved to Washington, D.C. and began living aboard *634 the Shenandoah at a dock in Southwest Washington, D.C., he apparently did so sometime in 1982 or 1983. [4]
Petitioner has a high school education through the 11th grade and worked in various positions with the United States Department of Transportation (DOT). She started as a secretary-stenographer in 1967 with DOT and, through in-house training and promotions, became an administrative staff assistant to an associate administrator of the National Highway Traffic Safety Administration (NHTSA) *635 of DOT in 1979. She was a GS-11 analyst at all times relevant to this case. Throughout her career at DOT, petitioner completed a number of specialized courses, such as Budget Formulation (40 classroom hours) and Budget Execution (40 classroom hours). She also participated in various management development and computer systems workshops. In 1976, petitioner successfully completed a 40-hour Civil Service Commission course designed to teach bookkeeping and accounting practices. This course presented the basics of accrual accounting and provided an understanding of the fundamental financial reports generated by the accounting system of the NHTSA. During the years she was employed by DOT, petitioner was thorough in completing assigned tasks and assisted her superiors above and beyond their normal expectations. She possessed a knowledge of the proper contacts to make in other organizations to accomplish her assignments. She demonstrated an ability to work well with other employees. In 1981, petitioner started her own part-time jewelry business known as "Jerrilynn's et ceteras." She used the Shenandoah on occasion in 1982 for dockside jewelry parties. See supra note 2. Shortly *636 thereafter, she discontinued the business for lack of profit. In 1981, petitioner also began to assist Mr. Hull in the operation of his boat charter business, a sole proprietorship called Exclusive Executive Charters. In her Personal Qualifications Statement of her application for Federal employment (SF 171), dated February 25, 1983, petitioner reported that she was the first mate, partner, and business manager of the Shenandoah. Although she was also identified as "Business Manager" on the Shenandoah business card, petitioner did not keep any of the records of income and expenses nor did she prepare any tax filings for the business until after Mr. Hull's death. Petitioner did not discuss record keeping or tax accounting for the Shenandoah with Mr. Hull. She was primarily responsible for the physical maintenance and cleaning of the boat and for developing customer relations. From 1981 to 1983, Mr. Hull chartered the yacht a total of two or three times a year. In 1984, the Hulls chartered the yacht to third parties perhaps three to five times during the year. Their return reported charter boat receipts of only $ 3,030 for that year. Petitioner had intended to continue the *637 charter business after Mr. Hull's death, but she did not hire a captain, which was necessary for any charters. The Shenandoah was not chartered at any time during 1985, and their return reported no income from the boat for that year. After the death of her husband, Mrs. Hull filed joint Federal income tax returns on her own behalf and on behalf of her deceased husband for the 1984 and 1985 taxable years. Mrs. Hull sought the assistance of Mr. Potter in the preparation of both returns. She had first met Mr. Potter at Danker's West, a restaurant located near DOT that the Hulls and Mr. Potter frequented. While he was preparing the Hulls' 1984 and 1985 tax returns, Mr. Potter was not aware that Mr. and Mrs. Hull had been living aboard the Shenandoah. He first learned of the Hulls' marriage from casual conversations that had taken place in Danker's West, where he had heard that she "was doing marriage." Also, Mrs. Hull had told Mr. Potter of her marriage to Mr. Hull. [5] However, had Mr. Potter known that Mr. and Mrs. Hull had been living on the boat, he would have advised her that she could not deduct the boat expenses. During their meetings, Mrs. Hull did not seek any advice from *638 Mr. Potter concerning how to account for the Shenandoah for tax purposes. Mr. Potter did not ask her if she was living on the boat, and she did not mention the fact. Thus, Mr. Potter did not discuss with Mrs. Hull the tax consequences of living on the boat, either when the 1984 return was prepared in August of 1985 or when the 1985 return was prepared in September of 1986. See supra note 5. On those returns, the following gross receipts and Schedule C losses were reported: Year
Gross Receipts
Schedule C Loss
1984
$ 3,030
($ 34,942)
1985
- 0 -
($ 21,607)
*639 Petitioner acknowledged in the parties' stipulation of facts that section 280A disallows the deductibility of losses in excess of the income attributable to the ownership and operation of the Shenandoah and that the limitations of section 280A are applicable for the 1984 and 1985 tax years. She further acknowledged that the losses claimed on the 1984 and 1985 Schedules C are not allowable, but she does not agree with the computation of tax liability reflected in the statutory notice of deficiency. Petitioner offered no evidence to show any errors in the computations of the deficiencies. [6] On those 1984 and 1985 returns, Mrs. Hull reported income tax liabilities of $ 8,081 and $ 5,113, respectively. Respondent determined that the spouses' correct income tax liabilities for 1984 and 1985 were $ 19,469 and $ 10,383, respectively. Respondent also determined additions to tax for negligence under section 6653(a)(1) and (2) and additions to tax for substantial understatements under section 6661 each year. Petitioner has requested respondent to waive the additions for substantial understatements, but respondent has declined to do so. *640 OPINION Only the additions to tax remain in dispute in this case. Section 6653(a)(1) imposes an addition to tax if any part of an underpayment is due to negligence or intentional disregard of rules or regulations. Section 6653(a)(2) imposes a further addition in the amount of 50 percent of the interest due on that portion of the underpayment attributable to the negligence or intentional disregard. Respondent's determination of additions to tax under section 6653(a) is "presumptively correct and must stand unless the taxpayer can establish that * * * [she] was not negligent." Hall v. Commissioner, 729 F.2d 632, 635 (9th Cir. 1984), affg. a Memorandum Opinion of this Court. Petitioner bears the burden of proving that the underpayments of tax for the years at issue were not due to negligence or intentional disregard of rules or regulations. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115, 78 L. Ed. 212, 54 S. Ct. 8 (1933); Bixby v. Commissioner, 58 T.C. 757, 791 (1972). "Negligence is lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances." Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967); *641 Neely v. Commissioner, 85 T.C. 934, 947 (1985). A taxpayer has a duty to file complete and accurate tax returns and normally cannot avoid this duty to file by placing responsibility with an agent. United States v. Boyle, 469 U.S. 241, 250-251, 83 L. Ed. 2d 622, 105 S. Ct. 687 (1985). [7] However, under limited circumstances, a taxpayer may avoid liability for the negligence addition by good faith reliance upon expert tax advice to satisfy the reasonable person standard. Jackson v. Commissioner, 86 T.C. 492, 539-540 (1986), affd. 864 F.2d 1521 (10th Cir. 1989). The Supreme Court, in United States v. Boyle, 469 U.S. at 251, emphasized that: When an accountant or attorney advises a taxpayer on a matter of tax law, such as whether a liability exists, it is reasonable for the taxpayer to rely on that advice. Most taxpayers are not competent to discern error in the substantive advice of an accountant or attorney. To require the taxpayer to challenge the attorney, to seek a "second opinion," or to try to monitor counsel on the provisions of the Code himself would nullify the very purpose of seeking the advice of *642 a presumed expert in the first place. * * * "Ordinary business care and prudence" do not demand such actions. [Emphasis in original.]
Although the Supreme Court was construing "reasonable cause" under section 6651(a)(1), this approach applies equally to the negligence addition under section 6653(a)(1). See Jackson v. Commissioner, 86 T.C. at 539. In order to use reliance on professional advice as a defense, however, a taxpayer must have provided her advisor with complete and correct information and the error must be due to that advisor's mistakes. Pessin v. Commissioner, 59 T.C. 473, 489 (1972). Moreover, "[r]eliance on professional advice, standing alone, is not an absolute defense to negligence, but rather a factor to be considered." Freytag v. Commissioner, 89 T.C. 849, 888 (1987), *643 affd. 904 F.2d 1011, 1017 (5th Cir. 1990), affd. on another issue 501 U.S. 868, (1991). As Freytag demonstrates, reliance upon professional advice must be reasonable. Petitioner relies primarily upon Heasley v. Commissioner, 902 F.2d 380 (5th Cir. 1990), revg. T.C. Memo 1988-408, and Betson v. Commissioner, 802 F.2d 365 (9th Cir. 1986), affg. in part and revg. in part T.C. Memo 1984-264, to support her assertion that she should not be liable for the negligence addition under section 6653(a). She contends that, despite her training in bookkeeping and accounting, she is not sophisticated in tax matters and reasonably relied upon Mr. Potter to properly prepare the 1984 and 1985 tax returns. In Betson v. Commissioner, supra, the taxpayer deducted as ordinary and necessary business expenses certain sums he had advanced to his wholly owned corporation. The taxpayer argued that he made advances to the corporation to pay debts for which he felt he was personally liable, although he realized his obligation was secondary to that of his corporation. A shareholder may deduct *644 such advances if they were made in the ordinary and necessary course of the shareholder's own trade or business. This Court reviewed the taxpayer's purpose and motivations for making the payments and whether a sufficient nexus between the expenditures and the taxpayer's own business existed. We determined that the taxpayer could not deduct these payments made on behalf of the corporation but must treat them as capital contributions or loans to his corporation. We also concluded that the taxpayer and his wife were liable for the additions to tax for negligence. The taxpayer and his wife gave all of their personal records and financial data to an accountant, and the returns were prepared by that accountant from this data. The accountant then presented the prepared returns to the taxpayer and his wife for signature shortly before such returns were due to be filed. Neither the taxpayer nor his wife ever reviewed their returns prior to signing them. For these same years, the tax returns for his corporation were prepared by another accountant yet also signed by the taxpayer. This Court noted that even a cursory review by the taxpayer would have revealed the errors and inconsistencies *645 between the personal and the corporate returns, namely, that both the corporation and the individuals were deducting the same amounts. The United States Court of Appeals for the Ninth Circuit affirmed the disallowance of deductions, but concluded that the taxpayer and his wife were not liable for the negligence addition. The Ninth Circuit held that, although the taxpayer's position was incorrect, it was "reasonably debatable." Betson v. Commissioner, 802 F.2d at 372. The Ninth Circuit also concluded that the taxpayer had "relied in good faith on the substantive advice of his accountant," and that the record did not disclose any facts "sufficient to charge the taxpayer with notice of the erroneous legal position asserted in his return." [8]Id.
In Heasley v. Commissioner, supra, the taxpayers were blue collar workers, married with four children. Concerned about their financial future, these taxpayers *646 sought the advice of a financial consultant to assist them in making appropriate investments. This consultant suggested investing in an energy conservation program and reviewed the program's prospectus with the taxpayers. Not knowing how to report this investment on their tax return, the taxpayers employed a certified public accountant to prepare their return. Neither the consultant nor the accountant professed to be experts in the field of energy programs. Yet, having reviewed the prospectus and the accompanying tax and legal opinions, the accountant deducted on the taxpayers' return certain advance rents and claimed an investment tax credit. Respondent disallowed the advance rental payments and the investment tax credit, and also determined various additions, including the negligence addition. This Court sustained the additions to tax for negligence. We found it particularly relevant that the taxpayers had made no outside investigation of the investment program. This program did not involve a passive investment, but one that would require the active participation of the taxpayers. Yet, they exclusively relied upon the materials provided by the financial consultant who was *647 promoting the program. They did not thoroughly read these materials nor seek independent appraisals or reviews. We have rejected pleas of reliance when neither the taxpayer nor the expert relied upon knew anything about the business. Beck v. Commissioner, 85 T.C. 557 (1985); Flowers v. Commissioner, 80 T.C. 914 (1983). Finally, this Court found that the taxpayers exhibited a significant lack of care in not questioning the vastly inflated values placed upon the energy units used in the program, which values were used to calculate and claim their tax credits. However, the United States Court of Appeals for the Fifth Circuit concluded that, although respondent correctly determined tax deficiencies for the years at issue, the taxpayers were not liable for the negligence addition. The Fifth Circuit found that the taxpayers had made every effort to understand and monitor their investment and reasonably relied upon the advice of professionals. The Fifth Circuit reasoned that the costs of requiring extensive investigations by moderate-income investors "may prevent them from investing at all," and concluded that, due to "the Heasleys' honest misunderstandings *648 of law and fact, * * * their reliance on financial advisors, and their efforts to monitor their investment, they did not act negligently." 902 F.2d at 384. In both Heasley and Betson, the appellate courts concluded that the taxpayers involved had made reasonable efforts to determine their tax liabilities and had relied upon the substantive advice of business and tax professionals concerning relatively complex issues. Those cases do not help this petitioner. There are no complex legal issues in this case. More importantly, petitioner neither sought nor received any tax advice from the return preparer, Mr. Potter. Petitioner knew that she and Mr. Hull lived aboard the Shenandoah in 1984 and in 1985 until Mr. Hull's death; she knew that she continued to live aboard the boat for the rest of 1985. Mr. Potter, on the other hand, was unaware of those facts when he prepared the returns. Even in her petition to this Court, petitioner denied that she and Mr. Hull resided on the Shenandoah in 1984 and 1985, and only shortly before trial did petitioner finally admit that critical fact. Hence, in this case, petitioner, having failed to give the return preparer the *649 complete and necessary information to properly prepare the returns and admittedly having failed to ask him for any advice on the matter, cannot suggest that she reasonably relied upon the substantive advice of a tax professional to prepare the returns. Petitioner also knew that the Shenandoah had only been chartered a few times in 1984 and not at all in 1985. She reported income of only $ 3,030 from the Shenandoah in 1984 and no income from the boat in 1985. She deducted a Schedule C loss of ($ 34,942) for 1984 and ($ 21,607) for 1985. Even though Mr. Potter may have placed these figures on the Forms 1040, petitioner supplied the information to him and never asked him about the propriety of claiming the large loss deductions. Her legal position in this case was not "reasonably debatable." She did not make a reasonable effort to ascertain the validity of her position. In this Court, she merely attempted to shift this responsibility to Mr. Potter. Mr. Potter knew of the prior owner's audit and the tax consequences of living aboard the yacht. He did not initiate discussions of this issue with Mrs. Hull, and she did not ask any questions. Mr. Potter was unaware of the Hulls' *650 residence aboard the Shenandoah, and Mrs. Hull did not mention it to him at the time he was preparing the returns. Mrs. Hull's principal place of residence was the Shenandoah. Mrs. Hull, however, did not seek Mr. Potter's advice about that matter; had she done so, he would have told her she could not deduct the boat expenses. We, thus, find that the total underpayments for the taxable years 1984 and 1985 were due to negligence. We sustain respondent's determination of additions to tax under section 6653(a)(1) and (2) for those years. Section 6661(a) imposes an addition to tax for a substantial understatement of income tax. Section 6661(b)(2) defines "understatement" as the excess of the amount of tax required to be shown on the return over the amount of the tax imposed which is shown on the return. The understatement is "substantial" if it exceeds the greater of 10 percent of the tax required to be shown on the return for the taxable year or $ 5,000. Section 6661(b)(1)(A). The understatements of tax were substantial in this case. Section 6661(b)(2)(B) reduces the amount of the understatement potentially subject to the addition by any portion for which substantial authority *651 was given by the taxpayer and by any portion with respect to which the relevant facts affecting the item's treatment were adequately disclosed in the return or in a statement attached to the return. Section 1.6661-3, Income Tax Regs., defines "substantial authority." There was no substantial authority for the position taken by petitioner. There was no adequate disclosure of the relevant facts on the returns. Petitioner sought a waiver under section 6661(c). In determining whether a taxpayer has demonstrated reasonable cause and acted in good faith sufficient to warrant a waiver of the addition to tax under section 6661(c), "the most important factor * * * will be the extent of the taxpayer's effort to assess the taxpayer's proper tax liability under the law." Sec. 1.6661-6(b), Income Tax Regs. Respondent also places great emphasis upon the taxpayer's "experience, knowledge and education" in making this determination. Sec. 1.6661-6(b), Income Tax Regs.; Heasley v. Commissioner, 902 F.2d at 384-385. The Commissioner declined to waive the addition under section 6661 in this case. This Court will review the Commissioner's refusal to waive an addition to tax *652 only for an abuse of discretion. Heasley v. Commissioner, 902 F.2d at 385. "The review of the Commissioner's decision to not waive the addition to tax penalty is limited to whether the Commissioner's discretion has been exercised arbitrarily, capriciously or without sound basis in fact." Karr v. Commissioner, 924 F.2d 1018, 1026 (11th Cir. 1991), affg. 91 T.C. 733 (1988), supplemental opinion 93 T.C. 378 (1989); Mailman v. Commissioner, 91 T.C. 1079, 1084 (1988). There are no facts in the record of this case to suggest that the Commissioner's discretion was exercised arbitrarily, capriciously, or without sound basis in fact. Petitioner has not presented any evidence to suggest any abuse of discretion. Accordingly, we hold that the Commissioner did not abuse his discretion in refusing to waive the section 6661 addition to tax for the taxable years 1984 and 1985. Decision will be entered for the respondent. Footnotes
*. plus 50% of the interest on each deficiency.↩
1. After trial, petitioner conceded the innocent spouse issue raised under section 6013(e).↩
2. While petitioner testified that the Shenandoah was chartered two or three times in 1982, the only receipts reported were the $ 2,000 she allegedly paid Mr. Hull in cash. Petitioner did not file her 1982 tax return until 1984. After her marriage to Mr. Hull, Mr. Hull's tax return preparer, John Potter, prepared petitioner's tax return for 1982. Mr. Potter signed the return on April 22, 1984, and she signed it on May 17, 1984. On that return, filed later in May of 1984, petitioner deducted $ 2,000 as "rent on business property," which property was the Shenandoah.↩
3. The record does not indicate if the previous owner was also engaged in a charter business or what specific expenses he was allowed to deduct.↩
4. Petitioner, on brief, makes much of the fact that Mr. Potter should have known from "the boat address" that Mr. Hull and later petitioner and Mr. Hull were living aboard the Shenandoah. That boat address was merely a neighborhood post office box. It did not necessarily identify the location of the boat and did not prove where Mr. Hull and later petitioner and Mr. Hull lived.↩
5. Petitioner also testified at trial that she had told Mr. Potter that she and Mr. Hull were living aboard the Shenandoah. The Court did not find this testimony credible. Even in her petition to this Court in 1989, petitioner denied that she and Mr. Hull had their residence aboard the Shenandoah in 1984 and 1985. Shortly before trial, she finally admitted that she and Mr. Hull had lived on the boat those years. The Court is satisfied that any conversation petitioner had with Mr. Potter about living aboard the Shenandoah, if it occurred at all, took place much later than August of 1985 when he prepared the 1984 return and much later than September of 1986 when he prepared the 1985 return.↩
6. Petitioner bears the burden of proving that respondent's determination of deficiencies is erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115, 78 L. Ed. 212, 54 S. Ct. 8 (1933). As we have noted, petitioner acknowledges the applicability of section 280A. Moreover, petitioner did not introduce any evidence at trial concerning the deficiency issue nor did she specifically address this issue on brief. Thus, petitioner has failed to meet her burden of proof, or has conceded the correctness of respondent's determination of deficiencies. Rule 149; Cerone v. Commissioner, 87 T.C. 1, 2 n.1 (1986). See also Paoli v. Commissioner, T.C. Memo 1991-351↩.
7. See also Portermain v. Commissioner, T.C. Memo 1989-539, 1989 Tax Ct. Memo LEXIS 539, 58 T.C.M. (CCH) 293↩, 303, T.C.M. (RIA). 89,539 at 2698.
8. We note that the Tax Court views negligence as a factual inquiry.↩