8 F.3d 28
 73 A.F.T.R.2d 94-418
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Tom G. MURPHY, Petitioner-Appellant,
v.
COMMISSIONER INTERNAL REVENUE, Respondent-Appellee.
 No. 92-70108.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 12, 1993.
Decided Oct. 5, 1993.
 
 Before: WALLACE, Chief Judge; and D.W. NELSON and O'SCANNLAIN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 * Murphy acquired a seven-and-one-half foot tall sculpture of John Wayne from the artist, Brett Livingstone Strong. In December 1985, Murphy donated the John Wayne sculpture to Lubbock Christian College. Murphy procured a list of qualified appraisers from the IRS, and obtained an appraisal of the sculpture from one of the appraisers on the list, Bernard Ewell, a senior member of the American Society of Appraisers. Ewell appraised the sculpture at $500,000, based in part on the notoriety of the piece and in part on information regarding other commissions that Ewell had received from the artist. Murphy relied on the appraisal, and deducted a total of $500,000 from his 1985 and 1986 tax returns.
 
 
 3
 The commissioner disallowed the deduction on the grounds that Murphy had not established either the date of donation or the fair market value of the sculpture. The commissioner also imposed negligence and overvaluation penalties.
 
 
 4
 Murphy challenged these assessments in tax court. In preparation for trial, the commissioner obtained an appraisal of the sculpture by Charles Peavy, also a member of the American Society of Appraisers. Peavy took a different approach from the one taken by Ewell; he looked at auction prices of other artists' works in sandstone, and appraised the sculpture at $30,000.
 
 
 5
 The tax court accepted Peavy's determination, and found that the fair market value of the sculpture was $30,000. The court also upheld the negligence and overvaluation penalties. Murphy appeals the assessment of penalties only.
 
 II
 
 6
 Section 6653(a) of the Internal Revenue Code of 1985 and 1986 provides that a taxpayer will be assessed a penalty "[i]f any part of underpayment ... is due to negligence or disregard of rules or regulations." Negligence in failing to comply with the tax code is determined by the lack of due care or the failure to do what a reasonable or ordinarily prudent person would do under the circumstances. Betson v. CIR, 802 F.2d 365, 372 (9th Cir.1986). Accord Heasley v. CIR, 902 F.2d 380 (5th Cir.1990). In some circumstances, reliance on the advice of an expert can satisfy the due care standard. United States v. Boyle, 469 U.S. 241 (1985). Such reliance, however, must be reasonable and in good faith. Betson, 802 F.2d at 372.
 
 
 7
 We conclude that the tax court's finding that Murphy's reliance was unreasonable and in bad faith is clearly erroneous. The tax court upheld the penalty because it found that Ewell's appraisal was based on inflated information regarding the prices of comparable examples of Strong's work and that "Petitioner and/or Strong supplied Ewell with the sales and price information used in his appraisal." The uncontroverted evidence in the record indicates that Murphy provided Ewell with information regarding only the history of the John Wayne sculpture and the price that he had paid for it. Information regarding the sales and commission prices of other works was provided to Ewell directly by Strong. There is no indication that Murphy knew that Ewell had not independently verified all the information upon which he relied.
 
 
 8
 Nor is there any indication in the record that the information that Murphy did provide was misleading. The tax court did not make a specific finding that Ewell's report had misstated the amount Murphy had paid for the John Wayne sculpture; even if it had, however, a finding that the misstatement was attributable to misinformation supplied by Murphy would not be supported by the record. Ewell's report states that Murphy paid $100,000 in cash payments for the sculpture, and, in addition, had generated publicity that was worth $1 million to Strong. The $100,000 figure was well documented. While the value of the publicity is subjective, it is clear from Ewell's report that Ewell did not rely on Murphy's assessment of its value alone; rather, Ewell himself evaluated Murphy's promotional activities. In short, the record does not support the finding that the information Murphy supplied to Ewell rendered Murphy's reliance unreasonable.
 
 
 9
 We conclude, to the contrary, that the record viewed as a whole can support but one finding: that Murphy's reliance on Ewell's report was reasonable and in good faith. Ewell is a professional appraiser, and in fact, is a senior member of the American Society of Appraisers. There is nothing in the record indicating that Murphy should have believed that Ewell did not use his independent professional judgment in preparing the report. In addition, Murphy's good faith is demonstrated by the fact that Murphy advanced substantial sums to Strong for the creation of other works: $400,000 for the "John Lennon Bronze," in which he obtained a security interest, and $150,000 for "Presidential White House Monument," which was also to be repaid upon its sale. The fact that Murphy was willing to advance large sums of money to Strong on the understanding that he would be repaid upon sale indicates that he had a good faith belief that the market value of his work was comparable to the estimate provided by Ewell.
 
 
 10
 The commissioner contends that Murphy should have known that the appraisal was unreliable because he knew that Ewell, in appraising the sculpture, had considered its history and the media attention that it had received. Reliance on such factors, however, is proper. The court in Purdue v. Commissioner, 62 T.C.M. (CCH) 845 (1991), indicated that an appraiser could rely on the "romantic appeal and glamour" that certain objects had because of the publicity surrounding their creation or discovery, even if their value if measured by a quality standard would be considerably less.
 
 
 11
 The commissioner also points to what it terms "glaring errors" in Ewell's report that it contends should have alerted Murphy to the fact that the report was inaccurate. First, the report states that diamonds had been inserted in the eyes of the figure, but that they had been chipped out by thieves. In actuality, the sculpture had contained cubic zirconia in the eyes. As Ewell testified, this error did not affect the appraisal in any way since the stones were gone at the time of the appraisal. It did not render any reliance by Murphy unreasonable. Second, the commissioner contends that Ewell's report failed to document "flaws" in the sculpture, such as the asymmetrical design of the face. Ewell testified that these so-called flaws were actually part of the sculptor's conception of the piece. The commissioner's argument seems to be that since the sculpture was not fully representational, Murphy should have known that it was flawed. We reject this argument.
 
 
 12
 Finally, the commissioner contends that the report incorrectly states that the White House Monument had been commissioned by the White House for $1 million. It is clear from the report that Ewell did not believe that the White House commissioned the piece. Further, although there is some indication in the record that Murphy knew that the piece had not been commissioned for $1 million but rather donations in the amount of $1 million were being sought to pay for the piece, we are not persuaded that the presence of this error is enough in itself to render Murphy's reliance on Ewell's report unreasonable. Ewell's report contains information about other works with comparable prices. While the record is ambiguous as to whether those prices are accurate, there is no indication that Murphy did not believe them to be so.
 
 III
 
 13
 In addition to the penalty for negligence, Murphy was assessed a penalty for overvaluation under 26 U.S.C. § 6659(a) & (f)(1).
 
 
 14
 Under section 6659, a penalty is assessed if an underpayment of tax is attributable to an overvaluation of charitable deduction property. The Secretary may waive this penalty if the taxpayer shows "that there was a reasonable basis for the valuation ... and that such claim was made in good faith." Additionally, before the Secretary may waive the penalty, the taxpayer must prove that
 
 
 15
 (A) The claimed value of the property was based on a qualified appraisal made by a qualified appraiser, and
 
 
 16
 (B) in addition to obtaining such appraisal, the taxpayer made a good faith investigation of the value of the contributed property.
 
 
 17
 The Commissioner concluded it had no discretion to waive the penalty because the claim was not made in good faith. The tax court upheld this finding, concluding that the overvaluation penalty was proper.
 
 
 18
 Since we conclude that the tax court's finding that Murphy acted in bad faith was clearly erroneous, we remand for further findings under section 6659 as to whether Murphy had conducted a good faith investigation into the value of the piece in addition to obtaining an appraisal.[1]
 
 IV
 
 19
 We reverse the imposition of the negligence penalty. We remand for further findings on the overvaluation penalty.
 
 
 20
 REVERSED and REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Since consideration of a penalty under section 6661 will only be proper if the penalty under section 6659 is struck down, it is premature to consider Murphy's arguments regarding this section